# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KELLY CHRISTOPHER WARREN,

        Defendant-Appellant.

UNPUBLISHED
May 17, 2018

No. 333997
Mecosta Circuit Court
LC Nos. 15-008431-FH;
14-008297-FH

---

Before: GLEICHER, P.J., and M. J. KELLY and CAMERON, JJ.

PER CURIAM.

Defendant, Kelly Warren, pleaded guilty to two counts of operating a motor vehicle while intoxicated (OWI), third offense, MCL 257.625. The trial court sentenced him to serve two consecutive terms of 24 to 60 months in prison for each conviction. See MCL 768.7b(2)(a) (permitting the imposition of a consecutive sentence for an offense committed while the defendant was on bond for a prior felony offense). Warren moved to withdraw his plea in the trial court, asserting that it was defective because he had not been advised that he might receive consecutive sentences. The trial court denied the motion, and Warren applied for delayed leave to appeal in this Court. We denied his motion,[1] and Warren applied for leave to appeal in our Supreme Court. On July 25, 2017, in lieu of granting leave, our Supreme Court remanded Warren's case to this Court for consideration as on leave granted. *People v Warren*, 500 Mich 1056 (2017). The Court directed us to compare its decision in *People v Johnson*, 413 Mich 487; 320 NW2d 876 (1982), with this Court's decision in *People v Blanton*, 317 Mich App 107; 894 NW2d 613 (2016). The question at issue is whether a trial court must advise a defendant of the possibility of discretionary consecutive sentencing as a consequence of pleading guilty or no contest. For the reasons stated in this opinion, we hold that a trial court has no such duty. Consequently, we affirm.

---

[1] *People v Warren*, unpublished order of the Court of Appeals, entered November 1, 2017 (Docket No. 333997).

## I. BASIC FACTS

On November 29, 2014, Warren was arrested and charged with one count of OWI, third offense, and one count of operating a motor vehicle with a suspended license (subsequent offense), MCL 257.904(1). On June 6, 2015, while out on bond for the 2014 OWI, Warren was arrested and charged with another count of OWI, third offense, one count of operating a motor vehicle with a suspended license (subsequent offense), and one count of possession of an open alcohol container in a vehicle, MCL 257.624a. At a plea hearing on both cases, Warren pleaded guilty to both the 2014 OWI and the 2015 OWI in exchange for the prosecution dismissing the remaining charges. Although the trial court informed Warren of the maximum sentence possible for each OWI before accepting his guilty plea, the court did not advise him that by pleading guilty he could potentially receive a consecutive sentence. As noted above, the court sentenced Warren to 24 to 60 months for each conviction, with the sentences to be served consecutively. Warren moved to withdraw his plea, arguing that it was not voluntary and understanding because at the time he pleaded he did not know that he could receive consecutive sentences. The trial court, however, denied the motion. We must now determine whether the trial court's failure to advise Warren that a consequence of his guilty plea was the possibility of a consecutive sentence was a defect in the plea-taking process that would permit Warren to withdraw his plea.

## II. WITHDRAWAL OF GUILTY PLEA

### A. STANDARD OF REVIEW

We review a trial court's ruling on a motion to withdraw for an abuse of discretion. *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Blanton*, 317 Mich App at 117. "Interpretation of court rules presents a question of law that we review de novo." *Id.* Questions of constitutional law are reviewed de novo. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012).

### B. ANALYSIS

Although a defendant has the absolute right to withdraw a plea before the trial court accepts it on the record, the ability to withdraw a plea once it is accepted is limited. MCR 6.310(A)-(B). That ability is further limited after the defendant is sentenced. MCR 6.310(C). Post-sentencing, a defendant "must demonstrate a defect in the plea-taking process" before he or she may withdraw his or her plea. *Brown*, 492 Mich at 693. Warren argues that the defect in his plea was that the court failed to advise him that a potential consequence of his plea was the imposition of consecutive sentences. We disagree.

MCR 6.302 governs the procedure the court must follow before accepting a guilty or no-contest plea. Before accepting a guilty or no-contest plea, the court must be "convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). Relevant to this appeal, MCR 6.302(B) provides:

Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

(1) the name of the offense to which the defendant is pleading; the court is not obliged to explain the elements of the offense, or possible defenses;

(2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c;

(3) if the plea is accepted, the defendant will not have a trial of any kind, and so gives up the rights the defendant would have at a trial, including the right:

(a) to be tried by a jury;

(b) to be presumed innocent until proved guilty;

(c) to have the prosecutor prove beyond a reasonable doubt that the defendant is guilty;

(d) to have the witnesses against the defendant appear at the trial;

(e) to question the witnesses against the defendant;

(f) to have the court order any witnesses the defendant has for the defense to appear at the trial;

(g) to remain silent during the trial;

(h) to not have that silence used against the defendant; and

(*i*) to testify at the trial if the defendant wants to testify.

(4) if the plea is accepted, the defendant will be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not the defendant's own choice to enter the plea;

(5) any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right.

Under the plain language of MCR 6.302, therefore, the trial court has no explicitly stated duty to advise a defendant about the possibility that, by pleading guilty or no contest, the defendant may be subject to possible consecutive sentences. In *Johnson*, our Supreme Court held that a trial court has no duty to advise a defendant about consequences not enumerated by the court rule,[2] including "consequences such as consecutive sentencing." *Johnson*, 413 Mich at 490. However, in *Blanton*, this Court stated that there was a defect in the plea-taking process because the trial court failed to comply with MCR 6.302(B) when it did not advise the defendant "that by pleading guilty to felony-firearm (1) he would be sentenced to a *mandatory* two-year term of imprisonment, (2) this term of imprisonment would be served first, and (3) the concurrent sentences for armed robbery and assault with intent to commit great bodily harm would be served *consecutively* to the felony-firearm sentence." *Blanton*, 317 Mich App at 120 (emphasis added). The *Blanton* Court asserted that it was "well settled that a trial court must inform the defendant of 'any consecutive and/or mandatory sentencing' requirements." *Id*. at 119, quoting to *People v Mitchell*, 102 Mich App 554, 557; 302 NW2d 230 (1980), rev'd in part on other grounds 412 Mich 853 (1981).

At first glance, the statement in *Johnson* that the court has no duty to advise about consecutive sentencing and the statement in *Blanton* that the court must advise the defendant that he or she will be subject to mandatory consecutive sentences appear contradictory. And, as noted *supra*, our Supreme Court has directed us to compare the decisions in *Johnson* and *Blanton* as part of our analysis of this case. We discern no true conflict between *Johnson* and *Blanton*, however. Again, *Johnson* provided that the plain language in the court rule governed what consequences of a defendant's plea the trial court had to advise the defendant about. *Johnson*, 413 Mich at 490. In accord with that reasoning, the *Blanton* Court concluded (1) the court rule expressly stated that the court had to advise the defendant about any mandatory minimum sentence he or she would have to serve as a result of his or her plea, and (2) the mandatory minimum sentence for felony-firearm was a two-year sentence to be served preceding and consecutive to the sentence on the underlying offense. *Blanton*, 317 Mich App at 118-120. In other words, the requirement to advise a defendant about *mandatory* consecutive sentences falls within the plain requirements of the court rule, and the failure to advise a defendant about *mandatory* consecutive sentences is a defect in the plea-taking process that entitles a defendant to withdraw his plea under MCR 6.310(C).

Because the consecutive sentence imposed in this case was discretionary, not mandatory, *Blanton* is inapposite. Furthermore, we also find that *Johnson* is not dispositive even though it broadly states that a court has no duty to advise about consequences such as consecutive sentences. *Johnson*, 413 Mich at 490. First, as applied to consecutive sentencing, that statement is nonbinding dicta because it was unnecessary to the resolution of the legal issue to be decided,

---

[2] When *Johnson* was decided GCR 1963, 785.7 was the court rule governing the procedure for accepting guilty pleas. Relevant to this appeal, neither the court rule in effect when *Johnson* was decided nor the current version of MCR 6.302 expressly require a trial court to advise a defendant about a *possible* consequence sentence.

see *People v Peltola*, 489 Mich 174, 190 n 32; 803 NW2d 140 (2011).[3]  Second, and more importantly, the rationale in *Johnson* was undermined by our Supreme Court in *Cole*, 491 Mich 332-333, 337, where the Court held that even though it was not mandated by MCR 6.302, the trial court nevertheless had a constitutional duty to advise the defendant that his plea subjected him to mandatory lifetime electronic monitoring.[4]

In *Cole*, the Court held that in order "[f]or a plea to constitute an effective wavier of [a defendant's constitutional rights], the Due Process Clause of the Fourteenth Amendment requires the plea be voluntary and knowing," which "might, in a given proceeding, encompass more than the explicit requirements" of the court rule.  *Cole*, 491 Mich at 332-333.  Thus, if a defendant is not advised of a "direct and automatic consequence of a defendant's decision to enter a plea and forgo his right to trial" then the defendant cannot "be said to have entered an understanding and voluntary plea."  *Id*. at 327-328.  However, while due process requires a court to advise a defendant about any *direct* consequences of his or her plea, there is no requirement that the court also advise the defendant of any *collateral* consequences.  See *id*. at 333-335.  In *People v Fonville*, 291 Mich App 363, 385; 804 NW2d 878 (2011), this Court stated that the "possibility of imposition of consecutive sentences," is a collateral or incidental consequence of pleading guilty.

Accordingly, we conclude that the trial court did not abuse its discretion by denying Warren's motion to withdraw his plea.  There is no express requirement in MCR 6.302 that the trial court advise Warren that if he pleaded guilty then the court would have discretion to impose a consecutive sentence.  And, because the possibility that a consecutive sentence *may* be imposed

---

[3] The prosecution seems to suggest that the statement in *Johnson* is not dicta because this Court has cited it as binding in an unpublished per curiam opinion.  In *People v Lynum*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2015 (Docket No. 321394); unpub op 3, this Court cited *Johnson* for the proposition that our Supreme Court "has explicitly held that a trial court is not required to offer a defendant advice . . . as to potential sentence consequences such as consecutive sentencing." (quotation marks omitted; alteration in original).  However, *Lynum* lacks precedential value because it is unpublished.  MCR 7.215(C)(1).  Restating dicta in a nonbinding opinion does not somehow transform a dicta statement into a binding statement.  Accordingly, we find it of no consequence that *Lynum* cited *Johnson* for the proposition that a trial court need not inform a defendant of the possibility that he or she may receive a consecutive sentence.

[4] When *Cole* was decided, the court rules did not explicitly mandate that a defendant be notified by the trial court that he would be subject to mandatory lifetime electronic monitoring under MCL 750.520c(2)(b).  See *Cole*, 491 Mich at 330 n 4; see also MCR 6.302, staff comment to 2012 amendment (recognizing that the rule was amended to codify the holding in *Cole*, 491 Mich 325).

is a collateral consequence of pleading guilty, the failure to so advise Warren did not render his plea defective.[5]

Affirmed.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron

---

[5] Based on the record before this Court, it is not clear whether Warren's trial lawyer advised him that if he pleaded guilty the court would have discretion to impose a consecutive sentence. We recognize that a lawyer may provide constitutionally ineffective assistance if he or she fails to advise the defendant of certain consequences of a guilty or no contest plea. See *Fonville*, 291 Mich App at 394 (finding that the defendant received ineffective assistance when his lawyer failed to advise him that by pleading guilty he would have to register as a sex offender); see also *Padilla v Kentucky*, 559 US 356, 374-375; 130 S Ct 1473; 176 L Ed 2d 284 (2010) (finding that the defendant's lawyer's performance was deficient when the lawyer failed to advise the defendant that by pleading guilty he was subject to deportation). However, as Warren has not challenged the effectiveness of his trial lawyer, we will not address this issue further.